IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALEXIS MALDANADO,

    Plaintiff

        v.

DEPARTMENT OF CORRECTIONS, *et al.*,

    Defendants

CIVIL NO. 1:CV-13-2249

(Judge Caldwell)

*M E M O R A N D U M*

I.   *Introduction*

The pro se plaintiff, Alexis Maldanado, an inmate at the state correctional institution in Coal Township, Pennsylvania, filed this civil-rights lawsuit.[1] Plaintiff alleges the defendants violated his Eighth Amendment rights in the following ways: (1) they were deliberately indifferent to his mental-health needs until he attempted suicide; (2) they failed to protect him from attempting suicide after he expressed suicidal thoughts; (3) they discontinued his psychotropic medications for non-medical reasons; and (4) they made him sleep without a mattress on a cement floor for several days while he was on suicide watch. As relief, Plaintiff seeks compensatory and punitive damages. Named as defendants are the following employees of the Department of Corrections (DOC): Lt. Dunkle, B. Butler and

---

[1] The action was filed on August 26, 2013, while Plaintiff was housed at the state correctional institution in Waynesburg, but the allegations of the Complaint concern events that occurred while he was housed at the state correctional institution in Huntingdon. (Doc. 1, Compl.) Plaintiff filed an Amended Complaint on July 6, 2014. (Docs. 29 and 30, Am. Compl.) We treat the Amended Complaint (Doc. 29) and the memorandum of law in support of the Amended Complaint (Doc. 30) as the Amended Complaint.

Nurse Ann. Also named as defendants are Ms. Lane and Dr. Polmueller, employees of the group contracted to provide psychiatric services at the institution.[2]

Presently before the court is the DOC defendants' motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 34, Mot. to Dismiss).

The DOC defendants argue that: (1) portions of Plaintiff's claims are barred by the applicable two-year statute of limitations; (2) Plaintiff fails to allege Nurse Ann's personal involvement in the events of September 3, 2011; (3) Plaintiff's conditions of confinement in the psychiatric observation cell (POC) following his suicide attempt did not violate the Eighth Amendment; (4) Plaintiff's Eighth Amendment claims of deliberate indifference to his medical care should be dismissed as to the DOC defendants; and (5) Plaintiff's claims against the DOC defendants in their official capacity are barred by the Eleventh Amendment. (Doc. 35, Br. in Supp. Mot. to Dismiss). Maldanado has filed an opposition brief. (Doc. 41, Opp'n Mot. to Dismiss).

For the reasons discussed below, the court will grant the DOC defendants' motion to dismiss the Amended Complaint.

II.   *Standard of Review*

A motion to dismiss under Fed. R. Civ. P 12(b)(6) authorizes the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Under Fed. R. Civ. P. 12(b)(6), the district court must "accept all factual allegations as true, construe the

---

[2] Counsel for the DOC defendants notes that these defendants are not DOC employees. Neither Ms. Lane nor Dr. Polmueller has filed an answer or otherwise responded to the Complaint.

complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff is entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).  Formulaic recitations of the elements of a cause of action will not suffice.  *See Id.*  "[L]abels and conclusions" are not enough, and a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.

With this standard in mind, the following is the background to this litigation, as Plaintiff alleges it.

III.   *Background*

Before his September 9, 2010, transfer to SCI-Huntingdon, Plaintiff was housed in a "gang unit" at SCI-Fayette where he was involved in a "gang fight" for which he received unspecified disciplinary sanctions and prompted his transfer.  Upon his arrival at SCI-Huntingdon he was housed in Administrative Custody (AC) in the institution's

Restricted Housing Unit (RHU).  Fourteen days later, on September 22, 2010, he was placed in SCI-Huntingdon's general population.  (Doc. 30, ECF p. 2 and p. 7).

While at SCI-Huntingdon, he held the following classification (housing) codes: "H-Code" - High Risk due to violent tendencies; "O-Code" - Observations, to be closely watched; and "Z-Code" - single cell status.  (*Id.*, ECF p. 8).  He also received bi-weekly meetings with a psychologist, Baumgardner, "where they discussed his violent thoughts and attempted to address his mental needs."  (*Id.*)  He kept a diary as part of his therapy and attended "institutional guided classes to attempt to address his psychological needs." (*Id.*, ECF p. 8; pp. 15-16 and pp. 27-28).  He also took "strong medications," including Paxil and/or Remeron, to treat his severe depression.  (*Id.*, ECF p. 12 and p. 14).  Maldanado spoke to officers, wrote request slips, and spoke with nurses all in effort "to get somebody to take him [and his mental health needs] more seriously."  (*Id.*, ECF p. 10).

In June 2011, while in general population, Maldanado "acting on suicidal thoughts, tied a sheet around his neck to hang himself, however, he was talked out of it by staff member, Nurse Ann."  (*Id.*, ECF p. 3).

On July 11, 2011, Maldanado was called to the A-Block desk and asked to provide "a sample for a random drug urinalysis."  (*Id.*, ECF p. 2).  Having just voided, Maldanado asked if he could drink some water.  His request was denied.  When he could not produce a urine sample, unidentified staff concluded that he must be "dirty" because he refused to produce a urine sample.  (*Id.,* ECF p. 3).  Unidentified prison staff then threw him to the floor, handcuffed him, and took his to the RHU.

-4-

Several officers in the RHU knew Maldanado from his previous fourteen-day stay in the RHU in September 2010 when he was initially transferred to SCI-Huntingdon. Maldanado alleges that RHU staff were aware that he "voiced ideations regarding violence and suicide" during his first RHU stay. (*Id.*) This time when he was placed in the RHU, Maldanado began to experience "extreme anxiety and the thoughts of suicide resurfaced." (*Id.*) Staff subjected him to ridicule, jeers and jokes because of his talk of suicide. (*Id.*) He states his request slips to unidentified staff members went unanswered. (*Id.*)

On or about September 2, 2011, while in the RHU, Maldanado notified Lt. Dunkle and Nurse Ann of his "extreme anxiety" and that he was going to kill himself "if necessary" to stop these feelings. Lt. Dunkle advised Maldanado he would contact Mrs. Lane, a CRNP, in the psychiatry department about his concerns. Shortly thereafter, Maldanado was removed from his cell, taken to a shower area where he was stripped of his clothes and placed in a "smock." (*Id.*, ECF p. 4). At the same time, CO Cook (non-defendant) and others removed all of Maldanado's property from his cell, including his mattress and bedding. (*Id.*) Plaintiff was advised that Mrs. Lane "determined that he did not need to be placed in a Psychiatric Observation Cell (POC)," and he was returned to his empty RHU cell. (*Id.*) A "709 Notice" was placed outside of his cell door advising all staff that he was under "razor restriction, as well as, suicide watch." (*Id.*)

The next afternoon, on September 3, 2011, when CO Hawn (non-defendant) was passing out razors, he asked if Maldanado wanted one, to which plaintiff replied "yes." (*Id.*) CO Hawn gave Maldanado a razor. A few minutes later when defendant CO Butler

was making his rounds, Maldanado showed him the razor and asked why he was given one if he was on restrictions. (*Id.*) CO Butler replied that he did not know why he had received a razor. CO Butler then said that "your (sic) always talking about killing yourself, now's your chance, go ahead and kill yourself, at which point Maldanado began cutting his wrists." (*Id.*) CO Butler "simply sneered and walked away as Maldanado cut himself." (*Id.*) Approximately fifteen to twenty minutes later, CO Butler stopped at Maldanado's cell asking him "why didn't you kill yourself you parasite?" (*Id.*) "As a direct result of CO Butler's remarks," Maldanado began cutting himself again. (*Id.*, ECF p. 5). Shortly thereafter Lt. Dunkle came to the cell, saw the blood and asked if Maldanado would surrender the razor, to which he replied "yes." (*Id.*) Instead of taking the razor from Maldanado, Lt. Dunkle left and Plaintiff returned to cutting himself. (*Id.*, ECF p. 19).

Ten to fifteen minutes later, several officers came to Plaintiff's cell and found him lying on the floor, bleeding from his wrists. (*Id.*, ECF p. 5). He was handcuffed and provided medical care. His wounds were photographed. (*Id.*) He was taken to a POC in the medical area and placed on "Basic 4" restrictions as ordered by Dr. Polmueller. (*Id.*; *see also* ECF p. 21). "Basic 4" restrictions consist of "an anti-suicide smock and blanket which are tear resistant, a mattress, and slides — basic laceless shoes." (*Id.* ECF p. 5 and ECF p. 21).

Maldanado immediately complained about sleeping on the floor, without a mattress, because of back problems. He told several nurses, including Nurse Ann, about his back problems. (*Id.*) He filed "grievances" concerning "this violation of his Eighth

-6-

Amendment rights" but received no relief.  (*Id.*)  Maldanado slept on a cement floor for four or five days even though he was supposed to receive a mattress as part of his "Basic 4" prescription.  Maldanado suffered from a pre-existing back problem which was causing him pain due to the lack of a mattress.  (*Id.*)

On September 3, 2011, an "Other Report," #B 383524, was written concerning Maldanado, stating that he was "a danger to self" and "cutting himself."  The report was issued on September 9, 2011.  (*Id.*, ECF p. 30).  Maldanado also received a misconduct for these events.  (*Id.*, ECF p. 31).

Maldanado avers that Ms. Lane, Nurse Ann and Lt. Dunkle "had first hand knowledge of [his mental health] history."  (*Id.*, ECF p. 13).

On or about November 2, 2011, Maldanado's psychotropic medications were discontinued "for non-medical reasons."  (*Id.*, ECF p. 14).  He filed grievance #381426 concerning this issue.  (*Id.*, ECF p. 14).

IV.   *Discussion*

   A.   *Statute of Limitations*

The statute of limitations for a § 1983 claim is the particular state's statute of limitations for personal injury actions.  *See Wallace v. Kato*, 549 U.S. 384,387, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007).  In Pennsylvania, the statute of limitations applicable to Maldanado's § 1983 claims is two years.  *See Pearson v. Sec'y Dept. of* Corr., 775 F.3d 598, 602 (3d Cir. 2015).  Pursuant to the prison mailbox rule, *see Houston v. Lack*, 487

U.S. 266, 275-76, 108 S.Ct. 2379, 2384-85, 101 L.Ed.2d 245 (1988), we will consider the original complaint as being filed on August 26, 2013, and not August 28, 2013, the date it was received by the court.

Defendants argue that any claim occurring before August 26, 2011, is barred by the statute of limitations unless the statute is tolled for some reason. (Doc. 35, ECF pp. 6-7). Maldanado does not dispute this assertion. He argues that the events central to this action occurred on or after September 3, 2011. (Doc. 43, Pl.'s Opp'n Br., ECF pp. 2-3). Additional details were included for the purpose of providing a "foundational history" of events leading to the events of September 3, 2011 and "are not 'causes of action' in and of themselves." (*Id.*, ECF p. 3). "The pre-two year period facts and events are offered into evidence to demonstrate the facts of how and why the defendant(s) are culpable for their actions." (*Id.*)

As the parties are in agreement that claims arising prior to August 26, 2011, are time-barred, the DOC defendants' motion to dismiss will be granted for any conduct occurring before that date.

    B.    *Lack of Nurse Ann's Personal Involvement in Maldanado's Failure to Protect Claim Concerning His September 3, 2011, Attempted Suicide*

To state an Eighth Amendment failure-to-protect claim, a prisoner must allege that (1) he faced a "substantial risk of serious harm" and (2) the named prison officials acted with "deliberate indifference" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1998). The Eighth Amendment imposes upon prison

-8-

officials a duty to address the serious medical needs of inmates, including psychiatric needs. *Colburn v. Upper Darby Township*, 838 F.2d 663, 668 - 69 (3d Cir. 1988).  If prison officials know of a particular inmate's vulnerabilities to suicide, they may not be deliberately indifferent to that vulnerability.  *Wargo v. Schuylkill Cnty.*, 348 F. App'x 756, 759 (3d Cir. 2009)(nonprecedential)(citing *Colburn*, 838 F.2d at 669).

"[I]n determining whether a prison official has shown deliberate indifference to inmate health or safety, [a court] must look to what a prison official actually knew rather than to what a reasonable official in his or her position should have known."  *Serafin v. City of Johnstown*, 53 F. App'x 211, 214 (3d Cir. 2002)(nonprecedential).  Not only must a prison official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.  A prison "official who knows of a risk to a prisoner can avert liability if he shows he acted reasonably, even if injury still occurred."  *Freeman v. Miller*, ___ F. App'x ___, ___, 2015 WL 3794657, at *2 (3d Cir. 2015) (nonprecedential) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001)).

Defendants claim that Maldanado fails to state an Eighth Amendment failure-to-protect claim against Nurse Ann in connection with his September 3, 2011, suicide attempt.  (Doc. 35, ECF p. 7).  The court agrees. Construing the facts of the Amended Complaint in the light most favorable to Maldanado, as we must, Maldanado fails to allege Nurse Ann's personal involvement in the events of September 3, 2011.  At most, Maldanado alleges that Nurse Ann was aware of a previous suicide attempt (a month

prior), and that on September 2, 2011, she and Lt. Dunkle heard him express suicidal thoughts. She was present when Lt. Dunkle told Maldanado that he would contact Mrs. Lane, who worked in the mental-health department, regarding his suicidal feelings. Shortly thereafter, Maldanado was temporarily removed from his cell, dressed in a suicide smock while the contents of his cell were removed, and as plaintiff notes, he was "effectively" placed on suicide watch within the RHU. Missing from the Amended Complaint are any allegations that Maldanado had further interaction with Nurse Ann after he was placed on suicide watch in the RHU and before September 3, 2011, when he attempted suicide. He does not suggest that she had any actual knowledge that his mental health status had deteriorated further, or that she was aware that Mrs. Lane's instructions regarding his care exposed him to a substantial risk of serious harm. Accordingly, Maldanado has failed to allege sufficient facts to suggest that Nurse Ann was deliberately indifferent to his psychological needs as is required to state a claim under the Eighth Amendment.

    C.    *Conditions of Confinement Claim Related to Maldanado's Five Day Stay in the POC Without a Mattress.*

To sufficiently allege an Eighth Amendment conditions-of-confinement claim, Maldanado must aver: (1) that his conditions of confinement were sufficiently serious under an objective standard; and (2) that prison officials acted with deliberate, subjective indifference, to his health or safety. *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992)(citing *Wilson v. Seiter*, 501 U.S. 294, 298-303, 111 S.Ct. 2321, 2323-2326, 115 L.Ed.2d 271 (1991)). As to the objective component, an Eighth Amendment violation

-10-

occurs when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*, 452 U.S. at 347, 101 S.Ct. at 2399. The Eighth Amendment does not mandate that prisons be free of discomfort. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d. 156 (1992). Only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Id.* Again, whether the required showing has been made depends on a number of factors "includ[ing] the length of confinement, the amount of time prisoners must spend in their cells each day, the opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation and showers." *Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990).

As to the subjective component, the question is whether the defendant acted with deliberate indifference to the inmate's health or safety. *Hudson*, 503 U.S. at 8, 112 S.Ct. at 999. Thus, when considering a claim under the Eight Amendment, courts must inquire as to whether "the officials act[ed] with a sufficiently culpable state of mind" and whether the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.*

In reviewing this type of claim, the courts have stressed the importance of the duration of the complainant's exposure to the alleged unconstitutional conditions, and a

-11-

review of the "totality of the circumstances," as being critical in the Eighth Amendment determination, and not just the allegedly egregious conditions themselves. *Rhodes*, 452 U.S. at 362-33, 101 S.Ct. at 2407.  "The denial of [an inmate's] mattress for a short period of time does not rise to the level of a constitutional violation." *Milhouse v. Gee*, No. 09-CV-2134, 2011 WL 367414, at *13 (M.D. Pa. Aug. 17, 2011) (citing *Lane v. Culp*, No. 05-CV-576, 2007 WL 954101 (W.D. Pa. Mar. 28, 2007)(holding the denial of clothing and bedding for a period of seven days does not rise to the level of a constitutional violation)); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995)(four days without clothing, mattress, or any bedding was not a constitutional violation).

Here, Plaintiff's claim is that he was placed in a POC for four or five days and that during this time he was denied a mattress even though defendants knew he suffered from back problems and could not sleep on a bare floor.  Defendants argue that the temporary denial of a mattress, while Maldanado was on suicide watch in the POC within the medical unit, does not rise to the level of an Eighth Amendment conditions-of-confinement claim.  (Doc. 35, ECF pp. 8-9).  The court agrees.

Significantly, Maldanado's conditions-of-confinement claim concern the limited period of time that he was on suicide watch, at the most four or five days.  As a result, his claim must be considered in that context.  His placement in the POC was necessary after a suicide attempt and ordered at the direction of medical personnel, a physician.  Maldanado himself asserts he was without a mattress for approximately four or five days.  This period of time does not meet the duration requirement.  The limited length

of the deprivation does not constitute cruel and unusual punishment. *Milhouse*, 2011 WL 3627414, at *12-13 (two-week removal of mattress does not state an Eighth Amendment claim).

Additionally, the denial of a mattress while he was housed in the POC, according to Maldanado was directed by medical personnel (and not the DOC defendants), and was implemented to insure his safety, a goal that unfortunately mandated greater concern than his comfort.

Given the objective and subjective components of an Eighth Amendment conditions of confinement claim, as discussed above, Maldanado fails to show that the temporary deprivation of a mattress was "sufficiently serious" to rise to the level of an Eighth Amendment claim, or that the moving defendants were responsible for implementing this restriction. He also fails to show that the denial of the mattress was anything more than uncomfortable. He does not suggest he suffered any significant physical injury as a result of the lack of a mattress for four to five days or that it posed an excessive risk to his health. Likewise, he does not demonstrate "the [defendants] act[ed] with a sufficiently culpable state of mind"; in fact, the allegations of the Amended Complaint demonstrate the exact opposite of what Maldanado is alleging. As noted above, the Amended Complaint states that after Maldanado attempted suicide with a razor, defendants were concerned for his health and safety and contacted medical staff who ordered his placement in the POC on suicide watch. During this time, he was continuously monitored and was denied access to items that he could use to harm himself.

Given the brevity of the deprivation, and the totality of the circumstances, the lack of injury or exposure to a substantial risk of serious harm, Maldanado's conditions-of-confinement claim based on the temporary lack of a mattress while in the POC following a suicide attempt will be dismissed against the DOC defendants.

D.   *Maldanado's Eighth Amendment Claims that DOC Defendants Were Deliberately Indifferent to his Medical and Mental Health Needs*

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. XIII; *see Wilson v. Seiter*, 501 U.S. 294, 296-97, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). In order to establish a denial of medical care claim under the Eighth Amendment, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 105-06, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Allegations of malpractice or negligent treatment are insufficient to entitle a plaintiff to relief. *Id.*

A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). The inmate must satisfy this two-part conjunctive test. Without the requisite mental state, a prison official's conduct alone will not constitute deliberate indifference. *Id.,* 511 U.S. at 837-38, 114 S.Ct. at 1979. To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety. *Id.,* 511 U.S. at 837-38, 114 S.Ct.

-14-

at 1979.  Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with [medical] treatment once prescribed."  *Estelle*, 429 U.S. at 104-05, 97 S.Ct. at 291.

A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)(citations omitted).  Persistent severe pain qualifies as a serious medical need.  "If 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment."  *Id.* at 347 (3d Cir. 1987)(quoting *Estelle*, 429 U.S. at 103, 97 S.Ct. at 290).

However, prison officials who are not physicians cannot be considered deliberately indifferent to a serious medical need simply because they failed to respond directly to the complaints of a prisoner who was already being treated by the prison doctor.  *Durmer v. O'Carroll,* 991 F.2d 64, 68 (3d Cir. 1993)(holding that non-physician defendants were not deliberately indifferent where they did not respond to the medical complaints of a prisoner who was being treated by a prison doctor).  "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.

2004). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* at 236.

Maldanado admits in his Amended Complaint to receiving medical and mental-health treatment from medical and psychiatric professionals at the prison. He is seen regularly by psychiatric staff and is taking "strong" medication for his mental health condition, albeit he does not believe the treatment is working or sufficient. He does not assert that the DOC defendants delayed or withheld medical or psychiatric care from him; his dispute lies with those who direct and provide his mental-health treatment. To the extent Maldanado's disagrees with "Ms. Lane['s] determin[ation]" that he did not need to be immediately placed in a POC on September 2, 2011, Maldanado clearly acknowledges that this was a decision by a member of his treatment team and not the DOC defendants. Additionally, he does not aver any facts demonstrating that the DOC defendants knew that his treatment team was mistreating him or failing to treat his mental health issues once Lt. Dunkle notified them of his suicidal statements. The corrections staff followed the directions of the treatment staff when placing him in the RHU on suicide watch. As previously noted, for the only DOC defendant who is associated with the medical department, Nurse Ann, Maldanado fails to allege her personal involvement in the decision to place him in the RHU under suicide watch, or her knowledge of his further mental decompensation which would have suggested he should have been placed in the POC prior to his suicide attempt.

-16-

Therefore, Maldanado has not pled that the DOC defendants, knowing that he was under the care of physicians and the psychiatric staff, were aware of the urgency of his mental-health issues that they should not have deferred to the judgment of his treatment team when deciding that his placement in the RHU under suicide watch, rather than the POC, was clinically inappropriate for him on September 2, 2011. Maldanado's claim of medical deliberate indifference against the DOC Defendants will be dismissed.

E.   *Maldanado's Claims against the DOC Defendants in their Official Capacity are Barred by the Eleventh Amendment.*

The DOC Defendants contend that the Eleventh Amendment bars Maldanado's Section 1983 claims for money damages against them in their official capacities. The court agrees.

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 687-88, 121 L.Ed.2d 605 (1993); *Lombardo v. Pennsylvania*, 540 F.3d 190, 194 (3d Cir. 2008). By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued. *See* 42 PA. CONST. STAT. ANN. § 8521(b); *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). Likewise, suits against state officials in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 25-27, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991);

*Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

The Eleventh Amendment, however, does not bar claims for prospective injunctive relief brought against state officials in their official capacities. *See Iles v de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011). It also does not bar a suit for monetary damages against state officials in their *individual* capacities. *See Hafer*, 502 U.S. at 31, 112 S.Ct. at 364-65.

Here, Maldanado sues each DOC defendant in his individual and official capacities.[3] Accordingly, his claims for monetary damages against the DOC defendants in their official capacities will be dismissed. However, while technically Maldanado can properly seek prospective injunctive relief against the DOC defendants in their official capacities and pursue his claims for monetary damages against the DOC defendants in their individual capacities, as all claims against the DOC defendants are meritless, he is not entitled to any form of relief against them.

---

[3] Also pending before the court is Maldanado's Motion to file a Second Amended Complaint. (Doc. 42). In this motion, Maldanado simply seeks to clarify that he is naming all defendants not just in their official capacities but in their individual capacities as well. (Doc. 42-1, Curative Amendment) ("Mr. Maldanado requests this Honorable Court to reflect that each defendant is being sued in his/her individual capacity.") Since Maldanado's proposed amendment is limited to ensuring defendants are named in their individual capacities, the court will grant the motion by recognizing that the defendants have been sued in their individual capacities. No second amended complaint need be filed.

      F.      *Further Amendment Against DOC Defendants Would Be Futile*

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). In this instance, the court believes that any amendment for Maldanado's claims against the DOC defendants would be futile given his statement of his claim is defined by his disagreement with the medical and mental-health professionals' response to his expressed suicidal thoughts, and ultimate suicide attempt, while housed in the RHU.

We will issue an appropriate order.

                                            /s/ William W. Caldwell
                                            William W. Caldwell
                                            United States District Judge

Date: August 20, 2015